**UNION CITY TRANSFER et al. v. WILLRODT et al.**

No. 12423.

Court of Civil Appeals of Texas. Galveston.

June 19, 1952.

Rehearing Denied July 10, 1952.

John H. Benckenstein, Beaumont, and Willis W. Ellison, Gonzales, for appellants.

Hollis Massey, Massey, Hodges, Moore & Gates, Columbus, G. H. Miller, Miller & Rutta, Columbus, John M. Pennington, Houston, and Albert P. Jones, Helm & Jones, Houston, for appellees.

CODY, Justice.

This is an appeal from the court's order overruling appellants' plea of privilege to be sued in the county of their residence, Jefferson County. This suit was instituted in the District Court of Colorado County by the surviving widow and children of A. W. Willrodt to recover damages for his death, alleged to have been proximately caused by the negligence of the driver of one of appellants' trucks whereby it collided with a truck then being driven by the deceased, resulting in his death. The accident occurred in Colorado County on July 31, 1951.

Preceding the trial of the venue contest on its merits, appellants, by special exceptions to the various grounds of negligence plead by appellees, urged that appellees' allegations were insufficient to bring their cause within Subd. 9 of Art. 1995, Vernon's Ann.Civ.St.Tex. The court sustained appellants' said special exceptions except with respect to three grounds of negligence plead by appellees, as the proximate cause of the deceased's injuries, namely, (1) appellants' driver's excessive speed, (2) his negligent turning of appellants' truck to his left onto his wrong side of the road, and (3) his negligent permitting some portion of his truck to be on the left-hand side of the road.—Appellants make no contention that said allegations did not present a case that would come within Subd. 9, Art. 1995. To the contrary, appellants' complaint is that upon the trial of the contest on its merits, which trial was had to the court without a jury, appellees' evidence, as a matter of law, was insufficient to sustain said allegations, which allegations were

admittedly sufficient to come within the purview of Subd. 9, Art. 1995.

No findings of fact nor conclusions of law were requested and none were filed.

The evidence showed without dispute that appellants, Cecil E. Vallee and E. H. Vallee, conducted their business as partners, under the name of Union City Transfer, and that each of them resided in Jefferson County. That the collision resulting in the death of deceased occurred about 6:30 p. m. on Farm Road 806, also known as Speakersville Road, about two miles south of its intersection with Highway 90 (popularly known as the Houston-San Antonio Highway). That the collision involved a 1949 Ford Pick-up truck belonging to the deceased and an oil field truck belonging to appellants. That Farm Road 806 runs in a northerly and southerly direction and that on the occasion in question deceased was driving in a southerly direction upon said road and that the truck of appellants was being driven in a northerly direction.

Aside from certain admissions of appellants relating to formal matters, which were introduced by appellees, the evidence which was introduced upon the trial consisted solely of the testimony of two witnesses who were called to testify by appellees, one being Mr. Louis Waldvogel, a merchant of Columbus, and the other being Mr. A. W. Willrodt, a son of the deceased.

In substance, Mr. Waldvogel testified that he and his wife were out driving in their automobile and that when they got near the end of the paved portion of said road he decided to turn back toward Columbus. That at the time he saw there were three oil field trucks (all of which it turned out later belonged to appellants) approaching, in a northerly direction (referred in the testimony as "toward Columbus"), and that the witness first thought he would turn in behind the first truck, but thought better of it, and turned in behind the second of said oil field trucks. That said truck was loaded with oil field pipe, and was the truck which was involved in the collision. Mr. Waldvogel further testified that the road was newly paved and had loose gravel on it and that the truck he was following was partly on the left-hand side of the road, as indeed was the witness himself because of loose gravel on the sides of the road. That the center line of the road was not marked. That at one time the witness tried to pass the truck but was in no hurry and dropped back. That at the time the collision occurred, the witness was about 150 feet from a sign indicating a curve in the road, which sign was a quarter of a mile from the point where the collision took place.

The witness further testified that when the truck entered into the curve it was being driven at the rate of 35 to 40 miles per hour, which was the speed at which witness was driving, and that said truck was still partly to the left of the center of the road. That witness did not actually see the collision take place because when it happened he was engaged in adjusting his rear-view mirror. That when he last observed the truck it was being driven about two feet left of the center of the road. That the first thing that attracted his attention to the collision was a cloud of dust caused by the oil field truck running through the ditch on its left-hand side of the road, that the truck then ran through the fence and into the field. That when witness got to the scene of the accident he noted that deceased's pick-up truck was on its side of the road and that oil had escaped from it out onto the road; that its front wheels were off and out in the ditch on its side of the road; that there was a load of hay scattered around on the road, some being on the oil field truck driver's side of the road; that there was a dent on appellants' truck's bumper a little right of center, and that said truck's front wheels were bent in.

Mr. Waldvogel further identified photographs which portrayed the road, inclusive of the point where the accident occurred, that were taken after the trucks had been removed, and which were introduced as appellees' exhibits. He identified thereon the large oil spot made on the road by oil which escaped from deceased's pick-up truck where the deceased's truck had come to rest. He also identified marks shown on the asphalt as being discernible from the

photographs. The marks were shown as being located near the point of the collision, and, in relation to the oil spot, away from Columbus. Mrs. Waldvogel at the time of the accident had been engaged in looking back at a man whom the Waldvogels had passed and who had attracted their attention and she did not see the accident and was not a witness.

Mr. A. W. Willrodt did not arrive at the scene of the accident until the next day, at which time he made certain measurements, with respect to which he testified. He testified that the asphalt or paved portion of the highway at the point of collision was 23 feet 8 inches wide. That he measured the fresh marks which had been made on the asphalt apparently by the oil field truck and one of said marks was 8 feet from the edge of the pavement on the deceased's side of the road, and another 12 feet from said edge.

From the relative positions of the deceased's truck and appellants' truck, as they were found to be by Mr. Waldvogel when he arrived at the scene of the collision, and from the location of the oil spot and from the marks made on the pavement, the court was warranted in concluding that the driver of appellants' truck had permitted a part of it to be over on the wrong side of the road and that this was negligence and a proximate cause. Furthermore, the presence of loose gravel on the pavement and the speed at which appellants' truck was being driven when last observed by Mr. Waldvogel, was some evidence from which it could have been reasonably concluded that appellants' driver was driving at a speed which was dangerous under the circumstances and that same was a proximate cause. The evidence of Mr. Waldvogel, to the effect that when he last saw appellants' truck it was projecting some two feet left of the center of the road as it entered into the curve, with some additional evidence, supported the conclusion that same was being driven on its wrong side of the road, and was a proximate cause. See Traylor v. Brentzel, Tex.Civ.App., 218 S.W.2d 261, and cases there cited.

The failure of appellants to produce their driver, who was the only surviving eye-witness of the tragedy, to testify, cannot be taken as supplying the necessary proof to establish appellees' allegations which brought the venue of the case within Subd. 9, Art. 1995. But appellees' evidence had at least some probative force to establish said allegations to support a reasonable conclusion against appellants on the issues made by said allegations. The failure of appellants to produce their driver to testify is a circumstance to be considered in evaluating the evidence. Id.

We overrule appellants' point, and hold that the court did not err in overruling their plea of privilege.

Judgment affirmed.